Argued and submitted January 5, in A154903, affirmed, in A155453, reversed and remanded December 30, 2015, petition for review denied May 26, 2016 (359 Or 667)

WASHINGTON COUNTY,
an Oregon political subdivision,
*Plaintiff-Respondent,*

*v.*

Bruce QUERBACH,
*Defendant-Appellant,*
*and*

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. (MERS);
Homestreet Savings Bank;
Pacific Northwest Title;
and Julia Querbach,
*Defendants.*

A154903 (Control)

WASHINGTON COUNTY,
an Oregon political subdivision,
*Plaintiff-Appellant,*

*v.*

Bruce QUERBACH,
*Defendant-Respondent,*
*and*

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. (MERS);
Homestreet Savings Bank;
Pacific Northwest Title;
and Julia Querbach,
*Defendants.*

Washington County Circuit Court
C123186CV; A155453

366 P3d 390

Jacquilyn Saito-Moore, Senior Assistant County Counsel, argued the cause and filed the briefs for Washington County.

Neil N. Olsen argued the cause for Bruce Querbach. With him on the briefs were Sean M. Mazorol and Zupancic Rathbone Law Group, P. C.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

This case involves consolidated appeals arising out of a condemnation proceeding and concerns the amount of attorney fees and expenses to which defendant is entitled, in light of a settlement offer by plaintiff, Washington County, that defendant did not accept. The settlement procedure at issue in this case is located at ORS 35.300. Under that statute, a condemner may serve an "offer of compromise" on a defendant at any time after filing a condemnation action, up until 10 days before trial. ORS 35.300(1). If the defendant does not accept the plaintiff's offer—as occurred in this case—the offer is withdrawn and may not be given in evidence at trial. ORS 35.300(4). However, if the defendant ultimately fails to obtain a judgment more favorable than the offer—as also occurred in this case—the unaccepted offer severs the defendant's entitlement to attorney fees incurred on and after service of the offer. *Id.* On appeal, the parties dispute whether the county's offer of compromise—which was unsigned and unfiled when the county initially made it—was effective to sever defendant's entitlement to attorney fees and costs under ORS 35.300(4). We conclude that it was and that the trial court erred in entering a supplemental judgment that failed to give effect to a valid offer of compromise. Accordingly, we affirm as to defendant's appeal and reverse and remand as to the county's appeal.

## I. FACTS

The relevant facts are procedural and undisputed. Before filing a condemnation action against defendant, Washington County offered defendant $54,000 as just compensation for taking a portion of defendant's property for a public road. That initial 40-day offer was made pursuant to ORS 35.346, which requires condemning authorities to offer to purchase property before filing a condemnation action. Defendant rejected the county's initial offer, and the county then filed a condemnation action against defendant, alleging just compensation for the taking and damages to the remainder at $54,000.

Later, on March 29, 2013, the county sent an "Offer of Compromise" to defendant, offering to settle the matter for $70,000 plus reasonable attorney fees and costs to be

later determined by the trial court. That offer was made pursuant to ORS 35.300(1), which, as noted, authorizes condemning authorities to pursue settlement by serving an "offer of compromise" on the defendant any time after filing a condemnation action, up until 10 days before trial. The "Offer of Compromise" was unsigned when the county sent it to defendant, and the county did not file the offer with the trial court at that time. Defendant rejected the offer.

The parties proceeded to trial in May 2013, and the jury returned a verdict for just compensation in the amount of $65,375—$4,625 less than the county's settlement offer. The court later entered a general judgment in favor of defendant, awarding just compensation in that amount, plus reasonable costs and disbursements, attorney fees, and expenses, to be stated in a supplemental judgment.

After the jury's verdict, the county filed the unsigned "Offer of Compromise" with the trial court, with a certification from the county's attorney that she had served that document on defendant's attorney on March 29, approximately two months earlier. Defendant demanded that the county voluntarily withdraw the offer, on the theory that the offer was not a valid offer of compromise under ORS 35.300 because it was unsigned and untimely filed. The county refused to withdraw the offer, and defendant moved to strike the offer from the record on those same theories. The county filed a response to defendant's motion to strike, arguing that its settlement offer was a valid offer of compromise, even though it was unsigned when sent to defendant and not filed until after trial.

While defendant's motion to strike was pending, defendant filed a statement of attorney fees, expenses, and costs, pursuant to ORCP 68, seeking reimbursement for $183,634.50—all of his attorney fees and costs, irrespective of the county's settlement offer.[1] The county filed objections, addressing both its offer of compromise and specific elements of defendant's statement.

---

[1] Defendant requested $137,294.00 for attorney fees, $36,180.50 for litigation expenses, $160.00 for costs and disbursements, and $10,000.00 for post-judgment work.

In support of the objections based on the offer of compromise, the county's attorney filed a declaration stating, in part, that the county "maintains its position that the Offer of Compromise served on Defendant on March 29, 2013 severs Defendant's entitlement to reasonable attorney fees, expenses, costs and disbursements pursuant to ORS 35.300." As an exhibit to the declaration, the county attached its earlier response to defendant's motion to strike, in which the county had argued that its settlement offer was a valid offer of compromise under ORS 35.300. The county's overarching objection to the particulars of defendant's statement was that defendant had requested "unreasonable" attorney fees. Specifically, the county argued that defendant's attorneys had billed excessive hours, in the amount of at least $36,302.50.

The trial court heard oral argument concerning both the motion to strike and the request for attorney fees, expenses, and costs on the same day. First, the trial court orally denied the motion to strike, concluding that the county's settlement offer was a valid offer of compromise under ORS 35.300. The trial court rejected defendant's argument that, because the offer was unsigned, it was a valid settlement offer that defendant was free to accept or reject, but it was not a valid "offer of compromise" with specific legal consequences under ORS 35.300. The trial court also rejected defendant's argument that ORCP 9 required the county to file the offer at the time that it served the offer on defendant.

Next, the trial court addressed defendant's request for attorney fees. Defendant argued that his attorneys' hours were not excessive and that, under ORCP 68 A, attorney fees associated with depositions are recoverable, even though costs are not. Then, defendant again addressed the offer of compromise, contending that the county "did not object with the required specificity as to the ORS 35.300 offer of compromise somehow diminishing our right to fees." After the county responded, the court took the matter under advisement.

In a letter opinion addressing both defendant's motion to strike and defendant's request for attorney fees,

the court made findings of fact concerning the offer of compromise: (1) "Defendant's rejection of Washington County's Offer of Compromise had nothing to do with it not being a signed offer"; (2) "At no time prior to the Offer of Compromise being filed with the court did the defendant put the County on notice that the Offer was unsigned"; and (3) "When Washington County filed the Offer of Compromise with the court, though the Offer was still unsigned, the certificate of service was signed by" the county's attorney. The court concluded that ORCP 17, the rule upon which defendant had relied to support his signing theory, applies only when documents are sent to and filed with the court. Because the county had filed an unsigned offer of compromise but a signed certificate of service with the court, the court concluded that "[a] reasonable remedy would be for County Counsel to send a signed copy of the Offer to the court within 5 days of receiving this decision." The court also concluded that it would be "unreasonable to strike the Offer because it was unsigned when the defendant never put County Counsel on notice of the Offer being unsigned or requested a signed offer." Thus, the trial court explained, it was conditionally denying defendant's motion to strike the offer of compromise, contingent upon the county filing a signed copy of the offer of compromise in accordance with its ruling.

Although the court denied defendant's motion to strike the offer of compromise, the court did not cut off defendant's attorney fees as of the date the county served its offer to pay defendant $70,000. Instead, the court stated that it was "awarding what it believes to be reasonable attorney fees and costs" and made findings pertinent to an attorney fee award under ORS 35.346(7). As relevant to the trial court's action here, ORS 35.346(7)(a) entitles a property owner to "reasonable attorney fees and reasonable expenses" after trial when "the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner before the filing of the action." The trial court found that the county's highest prefiling settlement offer was $54,000, which was less than the just compensation determined by the jury, and awarded defendant, pursuant to ORS 35.346(7) and without

further elaboration, $93,864.50 in attorney fees, $36,077.10 in costs, and $1,124.72 in interest.

Within five days of receiving the trial court's letter opinion, the county filed a signed copy of the offer of compromise. The county then moved for reconsideration of the fee award. The county argued that, because the jury verdict was for less than the county's offer of compromise, which the court had upheld as valid, ORS 35.300(4) limited the attorney fee award to fees and expenses incurred before March 29, 2013, the date that the county had served the offer on defendant. The trial court denied the county's motion for reconsideration, stating that the county "did not argue this point [at] the hearing or through any of its responses" and that its request "is now untimely." The court entered a supplemental judgment denying defendant's motion to strike and awarding defendant fees and expenses pursuant to ORS 35.346 and ORCP 68.

## II. DISCUSSION

Both parties timely appealed the supplemental judgment and various orders concerning the trial court's calculation of attorney fees. Ultimately, however, only the supplemental judgment—which contained the trial court's ruling on defendant's motion to strike and the attorney fee award—is at issue on appeal. The parties' appeals have been consolidated.[2]

Defendant raises two assignments of error: first, that the trial court erred in denying his motion to strike the county's offer of compromise from the record and, second, that it erred to the extent that it "reduced the award of attorneys' fees, costs, and expenses in the Supplemental Judgment and Money Award as a result of the Offer of Compromise." The county also raises two assignments of error: first, that the trial court "erred in failing to give effect to a valid offer of compromise made pursuant to ORS 35.300(4) when it awarded attorney fees and costs incurred past the date the offer of compromise was served on defendant" and, second,

---

[2] Defendant's appeal is A154903. Defendant also appealed the general judgment, but does not raise any assignments of error challenging it. The county's appeal is A155453.

that the court "erred in determining it had authority to impose reasonable attorney fees and costs absent a basis in statute or rule."

## A. *Defendant's Motion to Strike the Offer of Compromise*

Defendant's challenge to the denial of his motion to strike brings to the fore the parties' fundamental dispute: whether an unsigned settlement offer that is not filed at the time the condemner serves it and that complies with the express requirements of ORS 35.300 is a valid offer of compromise effective to sever a defendant's right to attorney fees under ORS 35.300(4). That question, which requires interpretation of a statute and the Oregon Rules of Civil Procedure, is central to our review of all of the trial court's rulings challenged on appeal and is a question of law that we review for legal error. *City of Harrisburg v. Leigh*, 254 Or App 558, 568, 295 P3d 138 (2013) (although we generally review an attorney fee award for abuse of discretion, when a trial court bases its decision on a legal conclusion, the standard of review is for error of law).

In interpreting a statute, we examine the text and context of the statute and, to the extent that it is helpful to our analysis, legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Likewise, "[w]e construe the rules of civil procedure using the same analytical method that applies to statutory construction." *Rains v. Stayton Builders Mart, Inc.*, 258 Or App 652, 657-58, 310 P3d 1195 (2013). Unless the legislature subsequently amends a rule promulgated by the Council on Court Procedures (CCP), which promulgates the rules, "[o]ur task in interpreting a rule of civil procedure is to discern the intent of the" CCP. *Id.* at 658.

### 1. *ORS 35.300*

The special procedures governing condemnation actions are located in ORS chapter 35. ORS 35.375 (providing that "any action for the condemnation of property under the power of eminent domain shall be conducted according to this chapter"). At issue in this case, ORS 35.300(1) addresses the procedural requirements for a condemner to

make, and a property owner to accept, an "offer of compromise" after the condemnation action is filed:

> "After the filing of a condemnation action, a condemner may serve an offer of compromise on the defendant in the action. An offer of compromise must be served on the defendant not later than 10 days before the trial of the action. The offer of compromise must identify the amount offered as just compensation for the property and as compensable damages to remaining property of the defendant. The offer of compromise must also indicate whether the offer includes any amount for costs and disbursements, attorney fees and expenses and, if so, the amounts included for costs and disbursements, attorney fees and expenses. If the defendant accepts the amount offered as just compensation for the property and as compensable damages to remaining property of the defendant, the defendant shall file with the court an acceptance signed by the defendant or the defendant's attorney. The acceptance must be filed not more than three days after the time the offer was served on the defendant. A copy of the offer must be attached to the acceptance."

Notably, ORS 35.300(1) plainly contains no signature requirement for the offer (but does require a signature for an acceptance of an offer of compromise) and identifies specific procedures and deadlines to file an acceptance, not an unaccepted offer.

If the condemner makes an offer of compromise and the defendant accepts it within the time allowed by the statute, the parties, in essence, have formed a settlement contract. *Cf. Miller v. American Family Mutual Ins. Co.*, 262 Or App 730, 737, 330 P3d 631 (2014) ("An offer of judgment under ORCP 54 E is an agreement between the parties and is 'in the nature of a contract, approved by the court.'" (Quoting *Nieminen v. Pitzer*, 281 Or 53, 57, 573 P2d 1227 (1978).)). If, however, the defendant does not accept the offer of compromise, under subsection (4) of the statute, the offer is deemed withdrawn and is immaterial, except as to attorney fees:

> "If an offer of compromise is not accepted within the time allowed under subsection (1) of this section, the offer is withdrawn and may not be given in evidence at trial.

If the defendant fails to obtain a judgment more favorable than the offer:

"(a) The defendant may not recover prevailing party fees or costs and disbursements, attorney fees and expenses that were incurred on and after service of the offer;

"(b) Unless the parties agree otherwise, the court shall give judgment to the defendant for costs and disbursements, attorney fees and expenses that were incurred by the defendant before service of the offer; and

"(c) The court shall give judgment to the condemner for the condemner's costs and disbursements, other than prevailing party fees, incurred by the condemner on and after service of the offer."

ORS 35.300(4). Like subsection (1), ORS 35.300(4) does not contain a filing requirement for an offer of compromise that the defendant has not accepted.

2. *Whether the county was required to file its offer of compromise*

Recognizing that the text of ORS 35.300 does not support his position, defendant argues that the court should have granted his motion to strike the county's offer of compromise because the Oregon Rules of Civil Procedure impose additional filing and signature requirements, and that a condemner's noncompliance with those procedures renders an otherwise valid offer of compromise ineffective to cut off attorney fees. We disagree with defendant's view.

Defendant's filing theory is that the offer of compromise was procedurally defective because the county did not file it concurrently with serving it on defendant, as required by ORCP 9. Defendant argues that the general filing requirements of ORCP 9 also apply to offers of compromise made pursuant to ORS 35.300. That rule provides that except "as otherwise provided in these rules, * * * every written request, notice, appearance, demand, offer of judgment, designation of record on appeal, and *similar document* shall be served upon each of the parties." ORCP 9 A (emphasis added). The filing requirement appears in ORCP 9 C, which requires that, except "as provided by section D of this rule, all papers required to be served upon a party by section A

of this rule shall be filed with the court within a reasonable time after service." ORCP 9 D exempts "[o]ffers of compromise made pursuant to Rule 54 E" from the ORCP 9 C filing requirement and provides that they "shall not be filed with the court except as provided in Rule 54 E(3)." Therefore, defendant argues, an offer of compromise made pursuant to ORS 35.300 must be filed "within a reasonable time after service" according to ORCP 9 C, because it is a "similar document" under ORCP 9 A, but it is not an ORCP 54 E "offer of compromise" exempt under ORCP 9 D.

Defendant bolsters his reading of ORCP 9 by relying on its evolution after our decision in *Wilmoth v. Ann Sacks Tile and Stone, Inc.*, 224 Or App 315, 197 P3d 567 (2008), *rev den*, 346 Or 185 (2009), which concerned whether an offer of compromise made under ORCP 54 E had to be filed with the court. In *Wilmoth*, we construed the relationship between ORCP 54 E and a prior version of ORCP 9, which did not contain the ORCP 9 D filing exemption for ORCP 54 E offers of compromise. *Id.* at 334-36. We held, under the rules then in effect, that

> "[n]either ORCP 54 E nor ORCP 9 D creates an exception to the filing requirement imposed by ORCP 9 A and C for 'every' offer of judgment. Therefore, a party who makes and serves an offer of judgment also must file it within a reasonable time."

*Id.* at 336. We also rejected an argument that, because ORCP 54 E expressly required only a party *accepting* an ORCP 54 E offer of judgment to file the offer, by negative implication, a party *making* an ORCP 54 E offer of judgment was not required to file the offer under ORCP 9. *Id.* In response to our holding in *Wilmoth*, the CCP amended both ORCP 9 and ORCP 54 E to clarify that only a party accepting an ORCP 54 E offer of judgment must file the accepted offer under ORCP 9. *See* Minutes, Council on Court Procedures, Dec 13, 2008, 6 ("[T]he promulgated amendment [to ORCP 54 E] should, contrary to *Wilmoth*, prevent Rule 9 C from making an unfiled ORCP 54 E offer ineffective.");[3] ORCP 9 D

---

[3] ORCP 54 E now provides:

"(E)(1) Except as provided in ORS 17.065 through 17.085 [regarding settlements concerning injured workers], any party against whom a claim is

*amended by* CCP Dec 2010 (amended to exempt Rule 54 E offers from the filing requirement). The legislature did not further amend those rules.

Defendant views those amendments narrowly. He notes that the amendment to ORCP 9 D exempts only ORCP 54 E "offers of judgment" but not "similar documents" from the ORCP 9 filing requirement. Therefore, defendant contends, the CCP intended to correct our decision in *Wilmoth* specifically as to ORCP 54 E offers of judgment, but to ratify *Wilmoth* to the extent that it applies to "similar document[s]."

The county does not urge a different view of ORCP 9 and its application to offers of compromise under ORS 35.300. Rather, the county asserts that an ORS 35.300 offer of compromise *is* an ORCP 54 E offer of judgment exempt from filing under ORCP 9, notwithstanding the fact that ORCP 54 E, by its terms, applies to offers made by defendants, not plaintiffs.

We disagree with both parties' arguments concerning how the legislature intended offers of compromise under ORS 35.300 to be made and to operate, a question that is properly before us. *See State v. Walker*, 192 Or App 535,

---

asserted may, at any time up to 14 days prior to trial, serve upon any other party asserting the claim an offer to allow judgment to be entered against the party making the offer for the sum, or the property, or to the effect therein specified. The offer shall not be filed with the court clerk or provided to any assigned judge, except as set forth in subsections E(2) and E(3) below.

"E(2) If the party asserting the claim accepts the offer, the party asserting the claim or party's attorney shall endorse such acceptance thereon and file the same with the clerk before trial, and within seven days from the time the offer was served upon such party asserting the claim; and thereupon judgment shall be given accordingly as a stipulated judgment. If the offer does not state that it includes costs and disbursements or attorney fees, the party asserting the claim shall submit any claim for costs and disbursements or attorney fees to the court as provided in Rule 68.

"E(3) If the offer is not accepted and filed within the time prescribed, it shall be deemed withdrawn, and shall not be given in evidence at trial and may be filed with the court only after the case has been adjudicated on the merits and only if the party asserting the claim fails to obtain a judgment more favorable than the offer to allow judgment. In such a case, the party asserting the claim shall not recover costs, prevailing party fees, disbursements, or attorney fees incurred after the date of the offer, but the party against whom the claim was asserted shall recover of the party asserting the claim costs and disbursements, not including prevailing party fees, from the time of the service of the offer."

542, 86 P3d 690, *rev den*, 337 Or 327 (2004) (when a party "plainly put in issue the proper construction of the statute," appellate court had an "obligation" to correctly construe the statute, "regardless of the parties' arguments"). We conclude instead that an ORS 35.300 "offer of compromise" is governed by the procedures in ORS chapter 35 and not the filing requirements in ORCP 9 C.

Although condemnation actions are special actions generally subject to the Oregon Rules of Civil Procedure, the rules do not apply "where a different procedure is specified by statute or rule." ORCP 1 A. In ORS chapter 35, the legislature has specified the procedures to make, accept, and file settlement offers in condemnation proceedings. The procedures governing condemnation actions have coexisted with generally applicable civil procedure rules almost since Oregon's statehood. *See generally* Jane A. Gearhart, *Condemnation Procedures in Oregon*, 46 Or L Rev 125, 127-30 (1967) (tracing legislative history of early condemnation procedures in Oregon). In 1862, the legislature enacted procedures governing the contents of the complaint and answer, trial practice, judgment entry, and appeals in condemnation actions by quasi-public corporations organized to improve railways, roads, canals, and bridges. General Laws of Oregon, ch VIII, title III, §§ 40-52, p 670-71 (Deady 1845-1864). Those 1862 procedures evolved into the condemnation procedures now codified at ORS chapter 35. *See* Gearhart, 46 Or L Rev at 127. Also in 1862, the legislature separately enacted a general code of civil procedure. General Laws of Oregon, Civ Code (Deady 1845-1864). The legislature specified in the condemnation statutes that a condemnation action was to be "commenced and proceeded in to final determination in the same manner as an action at law, except as * * * otherwise specially provided" in the condemnation procedures. General Laws of Oregon, ch VIII, title III, § 41, p 670 (Deady 1845-1864).

Since 1862, specific condemnation settlement procedures and cost-shifting statutes have coexisted with parallel rules of civil procedure that are generally applicable to civil actions. The 1862 condemnation laws contained an early version of the settlement procedure that now exists at ORS 35.346, which requires condemners to offer to purchase

property before filing a condemnation action. *See* General Laws of Oregon, ch VIII, title III, §§ 40, 49, p 670-71 (Deady 1845-1864). Like ORS 35.346, that 1862 statute allowed the defendant to recover "costs and disbursements" from the condemner, but altered that award if the defendant fruitlessly pursued trial after choosing not to settle:

> "[I]f it appear that such corporation tendered the defendant, before commencing the action, an amount equal to, or greater than that assessed by the jury, in such case the corporation shall recover its costs and disbursements off the defendant."

*Id.* § 49, p 671. That law evolved to encompass attorney fees and is now codified as part of the settlement procedure at ORS 35.346. Parallel to that cost-shifting law, the 1862 civil procedure code contained the generally applicable procedure to make and accept an "offer to allow judgment," which became ORCP 54 E:

> "The defendant may, at any time before trial, serve upon the plaintiff an offer to allow judgment or decree to be given against him for the sum, or the property, or to the effect, therein specified. If the plaintiff accept the offer, he shall by himself or attorney endorse such acceptance thereon, and file the same with the clerk before trial, and within three days from the time it was served upon him; and thereupon judgment or decree shall be given accordingly as in case of a confession. If the offer be not accepted and filed within the time prescribed, it shall be deemed withdrawn, and shall not be given in evidence on the trial ; and if the plaintiff fail to obtain a more favorable judgment or decree, he shall not recover costs, but the defendant shall recover of him costs and disbursements from the time of the service of the offer."

General Laws of Oregon, Civ Code, ch VI, title I, § 511, p 276 (Deady 1845-1864) (footnotes omitted); *see* Council on Court Procedures Comment to ORCP 54, *reprinted in* Fredric R. Merrill, *Oregon Rules of Civil Procedure: A Handbook* 110 (1981) ("Section 54 E is based on ORS 17.055," the statute where the 1862 offer of judgment law was ultimately codified.).

The Supreme Court construed the relationship between the condemnation settlement procedure and the

general offer of judgment rule in *Oregon Cent. R. Co. v. Wait.*, 3 Or 428 (1869). In that case, the property owner asserted that the lower court erred by awarding costs for the condemner, when the condemner failed to make a settlement offer before commencing the action. *Id.* at 434-35. As a backup argument, the condemner argued that the general civil rule governing offers of judgment supported the cost award. On appeal, the Supreme Court held for the property owner, concluding that the general offer of judgment rule was not applicable to condemnation proceedings because the specific provisions related to condemnation procedures "must govern." *Id.* at 435. Thus, the court recognized that the statutory settlement procedures related to condemnation actions were distinct from and superseded generally applicable parallel procedures.

Legislative history indicates that the legislature intended the offer of compromise settlement procedures at ORS 35.300 to supplement the longstanding prefiling settlement procedures at ORS 35.346. *See generally* Audio Recording, Senate Committee on Judiciary, SB 794, Apr 16, 2009, at 01:34 (statement of Harry Auerbach, Chief Deputy City Attorney, City of Portland), oregon.granicus. com/MediaPlayer.php?clip_id=5432 (accessed Dec 16, 2015) (explaining, on behalf of a condemning authority championing the offer of compromise procedure, the modern history of settlement procedures in ORS chapter 35). Given that historical context, we conclude, in accordance with ORCP 1 A, that the condemnation procedure concerning offers of compromise and their effect on attorney fees and costs is different from and supersedes the general civil procedure requirements related to settlement offers under ORCP 9 and ORCP 54.

Filing requirements for offers of compromise are explicitly identified in ORS 35.300. "If the defendant accepts" the offer of compromise,

> "the defendant shall file with the court an acceptance signed by the defendant or the defendant's attorney. The acceptance must be filed not more than three days after the time the offer was served on the defendant. A copy of the offer must be attached to the acceptance."

ORS 35.300(1). Contrary to defendant's theory that the county was required to file its initial offer, ORS 35.300 does not direct condemning authorities to file the initial offer. In addition, the specific three-day filing timeline provided in ORS 35.300(1) conflicts with the timeline in ORCP 9 C, which requires filing "within a reasonable time after service," and, therefore, the more specific timeline controls. *See* ORS 174.020(2) ("When a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent.").

Finally, attempting to give effect to both ORS 35.300 and ORCP 9 would be illogical, given the pro-settlement structure of ORS 35.300. At the time that a condemning authority makes an offer of compromise, whether the trial court will even need to see that document is unknown. Unaccepted offers of compromise are not admissible as evidence at trial and do not ultimately affect attorney fees if the defendant receives a higher jury verdict. ORS 35.300(4). And, requiring a condemner to file every settlement offer would chill settlement efforts, which is directly contrary to the pro-settlement policy underlying ORS chapter 35. In sum, the statutory scheme of ORS chapter 35—which contains condemnation settlement procedures that have superseded generally applicable settlement procedures for more than a century and a half—and the conflicts between ORCP 9 and ORS 35.300 lead us to conclude that ORS 35.300 contains the exclusive filing requirements for pretrial offers of compromise in condemnation actions.

3. *Whether the county was required to serve a signed offer*

We next turn to defendant's theory that ORCP 17 required the county to sign the offer of compromise before serving it on him. Under ORCP 17 A, "[e]very pleading, motion, and other document of a party represented by an attorney shall be signed by at least one attorney of record who is an active member of the Oregon State Bar." The catchall in that rule, "[e]very * * * other document of a party represented by an attorney," cannot extend to literally *all*

"other document[s] of a party." The general purpose of ORCP 17 lends some clarification to the scope of the rule.

Rule 17 is primarily a certification rule, which exists to prevent parties from presenting fraudulent or frivolous claims. *See* Council on Court Procedures, Staff Comment to ORCP 17, *reprinted in* Merrill, *Oregon Rules of Civil Procedure: A Handbook* at 35 ("This [rule] replaces the general verification requirements of ORS 16.070, 16.080, and 30.350 with a rule requiring only signature but specifying that such signature certifies truthfulness and merit."). That purpose is evident in ORCP 17 C and D, which identify the purposes of certification and sanctions for violating the certification rule. In short, the rule concerns "certification[s] *to the court.*" ORCP 17 C(1) (emphasis added). Thus, the ORCP 17 A signature requirement applies to documents that will be filed with the court.

In contrast to ORCP 17 A, ORS 35.300(1) imposes no signature requirement on offers of compromise at the time that they are made and, as we have concluded, does not require that those offers be filed with the court. The statute *does* require the defendant to sign an acceptance and to file the acceptance with the court, with a copy of the offer attached. ORS 35.300(1). Had the legislature intended ORCP 17 A to apply to all documents associated with ORS 35.300(1), it would not have needed to specify that acceptances must be signed.

Further, given the certification purpose of ORCP 17, we conclude that the rule does not apply to an ORS 35.300 offer of compromise at the time that a condemner serves it on a defendant. As noted, such an offer of compromise may never be filed with the court and, therefore, it may never be something that a condemner is required to certify. Applying ORCP 17 A to ORS 35.300 offers of compromise would also be contrary to the settlement scheme laid out in ORS chapter 35. The settlement procedures within ORS chapter 35 reflect legislative intent to encourage settlement in a context that is fair to both the condemner and the property owner. If a condemning authority initially low-balls a settlement offer and the property owner ultimately obtains a higher jury award, the property owner is entitled to all of his or

her attorney fees. ORS 35.346(7). And, if a property owner rejects a pretrial settlement offer and ultimately obtains a less favorable jury award, the property owner cannot receive attorney fees incurred because of his or her decision to proceed to trial. ORS 35.300(4).

Overall, ORS chapter 35 is concerned with whether a settlement offer was made at all, and defendant has articulated no principle of law that settlement offers must be signed to be valid offers. On the contrary, general contract principles direct that whether a communication is an offer of settlement depends on whether it objectively manifests the offeror's intent to be bound. *See Wall Street Management & Capital, Inc. v. Crites*, 274 Or App 347, 358, 360 P3d 673 (2015) (whether a contract has been formed depends on whether the parties have manifested mutual assent to do so); *ODOT v. Delta Inn, Inc.*, 168 Or App 50, 59, 3 P3d 180 (2000), *rev den*, 331 Or 583 (2001) ("Settlement agreements are contracts and, as such, they implicate general principles of contract law." (Internal quotation marks omitted.)). Whether a party manifests intent to be bound to a contract is a question of fact. *Wall Street Management & Capital, Inc.*, 274 Or App at 358.

Here, the trial court determined that the county had made an offer of compromise and rejected defendant's contention that he did not know that he could accept the unsigned offer of compromise. For good reason, defendant does not challenge those determinations on appeal. In fact, defendant expressly argued to the trial court that he had treated the unsigned offer of compromise as a valid settlement offer and had rejected it. That position was consistent with his prior actions: Defendant had emailed the county upon receiving the offer and stated, "We will not settle the matter at $70,000," and concurrently made a counteroffer.

Defendant's remaining argument touching on the lack of a signed offer of compromise is that, under ORCP 17 B, the offer should have been stricken from the record because it was still unsigned when the county filed it after trial on May 23. Under ORCP 17 B, "[i]f a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention

of the pleader or movant." For reasons similar to those already identified, we also reject that argument.

As discussed, ORCP 17 applies to representations to the court. An offer of compromise, filed in this context, is not a representation to the court. Nothing in ORS 35.300 requires that a condemner file an unaccepted offer of compromise separately, after the defendant receives a lower jury award, as the county did here. In other words, the county chose to file the offer of compromise in anticipation of defendant's request for attorney fees, but the statute does not foreclose the county from having filed the offer of compromise as an exhibit or in some other form. In this context, the offer of compromise functioned as evidence relevant to defendant's request for attorney fees; it did not function as a representation to the court falling within ORCP 17. Therefore, ORCP 17 A did not require a signature at the time that the county filed the offer of compromise, and ORCP 17 B did not require the court to strike the unsigned offer of compromise.

Having decided the central legal issues raised on appeal, we return to defendant's assignment of error to the trial court's denial of his motion to strike the offer of compromise. That ruling was based on the trial court's legal conclusions that ORCP 17 and ORCP 9 do not apply to an offer of compromise at the time the offer is made and that ORCP 17 did not apply to the offer of compromise at the time that it was filed. Because we have concluded that ORCP 17 and ORCP 9 do not apply to an offer of compromise, the trial court did not err in denying defendant's motion to strike.

B. *The Award of Attorney Fees, Expenses, and Costs*

Defendant and the county both argue that the trial court erred in its award of attorney fees in the supplemental judgment. Defendant argues that the trial court erred to the extent that it reduced his attorney fees as a result of the offer of compromise. The county argues that the trial court erred to the extent that it did not reduce attorney fees as a result of the offer of compromise. We reject defendant's argument and agree with the county, because we have already concluded that the offer of compromise was valid and because it appears that the trial court awarded some attorney fees incurred after the offer of compromise was served.

Before discussing the merits, we address defendant's contention that we should not review the county's assignment of error concerning the attorney fee award because, in defendant's view, the county failed to make "specific" written objections identifying the offer of compromise, as required by ORCP 68 C(4)(b).[4] Defendant characterizes the county's alleged failure to make specific objections as a preservation problem. It is not. The county's present argument that the offer of compromise severed attorney fees is preserved, given that both the trial court and defendant understood that the county's position was that its offer of compromise cut off defendant's entitlement to fees. The trial court considered the parties' arguments concerning the effectiveness of the offer of compromise in the same hearing as the court considered the attorney fee award. And, defendant himself highlighted the relationship between the offer of compromise and the fee award to the trial court, when he argued that the county had not appropriately objected on that basis. Therefore, the trial court had an opportunity to avoid legal error by giving effect to the offer of compromise. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (identifying policy rationales behind preservation doctrine).

The county's alleged failure to object with the requisite specificity is more appropriately considered to be a waiver problem. *See* ORCP 68 C(2)(d).[5] However, we conclude that the county's objection met the specificity required by ORCP 68 C(4)(b). Although the county's express objections concerned the "reasonableness" of defendant's attorneys' billing, the county stated, in a supporting declaration,

---

[4] ORCP 68 C(4)(b) provides:

"A party may object to a statement seeking attorney fees or costs and disbursements or any part thereof by written objections to the statement. The objection and supporting documents, if any, shall be served within 14 days after service on the objecting party of a copy of the statement. The objection shall be specific and may be founded in law or in fact and shall be deemed controverted without further pleading. The objecting party may present affidavits, declarations, and other evidence relevant to any factual issue including any factors that ORS 20.075 or any other statute or rule requires or permits the court to consider in awarding or denying attorney fees or costs and disbursements."

[5] ORCP 68 C(2)(d) provides, in part, "Any objection to the form or specificity of the allegation of the facts, statute, or rule that provides a basis for the award of fees shall be waived if not alleged prior to trial or hearing."

that it was still maintaining its position that the offer of compromise was valid and therefore cut off defendant's entitlement to fees. The county also attached a copy of its response to defendant's motion to strike, which addressed the validity of the offer of compromise. A trial court may look to accompanying affidavits and declarations in its ruling on attorney fees. *See* ORCP 68 C(4)(e). And, the trial court considered both the motion to strike and the attorney fee award at the same hearing, after a verdict had been returned. At that point, there would have been no reason for defendant to move to strike the offer of compromise, unless it were relevant to attorney fees. Under the circumstances, the county's objection was adequately specific.

On the merits of the parties' challenges to the award of fees, expenses, and costs, the parties agree that, when a valid offer of compromise is not accepted, the effect of ORS 35.300(4) is clear: "If the defendant fails to obtain a judgment more favorable than the offer * * * [t]he defendant may not recover prevailing party fees or costs and disbursements, attorney fees and expenses that were incurred on and after service of the offer." That provision cuts off the attorney fees and expenses to which the defendant would normally be entitled pursuant to ORS 35.346(7), which provides that, "[i]f a trial is held * * *, the court * * * shall award the defendant costs and disbursements including reasonable attorney fees and reasonable expenses" in two instances *"and no other."* (Emphasis added.) Those two instances are (1) the verdict exceeds the highest prefiling settlement offer that the condemner made pursuant to ORS 35.346(1) and (2) the initial prefiling offer made by the condemner was not in good faith. ORS 35.346(7)(a) - (b). Thus, when an unaccepted offer of compromise is at issue, an award of attorney fees, costs, and expenses has two steps. First, the trial court must determine that the defendant is entitled to attorney fees, costs, and expenses pursuant to ORS 35.346(7)(a) or (b). Second, the trial court must determine whether to give effect to the offer of compromise to cut off the award, based upon whether the offer of compromise was higher or lower than the verdict. ORS 35.300(4)(a) - (b); *see also* Audio Recording, Senate Committee on Judiciary, SB 794, April 16, 2009, at 08:26 (statement of Harry Auerbach, Chief Deputy City Attorney,

City of Portland), oregon.granicus.com/MediaPlayer.php?-clip_id=5432 (accessed Dec 16, 2015) (testifying that ORS 35.300(4) was "designed to clarify that when the government makes an offer of compromise during the course of the litigation, the owner is entitled to recover costs, expenses, and attorney[] fees incurred as of the date of the offer * * * whether the owner accepts the offer or whether the owner rejects the offer, unless, at the end of the day, the owner's result is lower than that initial offer (presuit offer), [which] means [that the owner does not] get any costs or fees at all").

Here, the trial court properly found that defendant was entitled to attorney fees pursuant to ORS 35.346(7)(a), because, as the trial court found, the verdict exceeded the county's highest presuit filing offer. The parties dispute, however, whether the trial court gave effect to the offer of compromise. Neither party has provided us with a sum reflecting which of defendant's attorney fees and expenses were incurred before the offer of compromise was served on March 29, 2013. However, a review of defendant's attorneys' billing statements, included in the trial court record, demonstrates that the trial court's $96,864.50 fee award necessarily included fees incurred after March 29, 2013. Likewise, the $36,077.10 award for expenses included expenses incurred after March 29, 2013. Therefore, the trial court erred by awarding attorney fees, expenses, and costs that defendant incurred upon and after service of the offer of compromise on March 29, 2013. We remand for the trial court to correct the supplemental judgment to account for the offer of compromise under ORS 35.300(4).

Finally, the county challenges the attorney fee award to the extent that the court "determin[ed] it had authority to impose reasonable attorney fees and costs absent a basis in statute or rule." If the county is arguing that the court lacked authority to award defendant any fees, the county did not preserve that argument. However, the county appears to be reasserting its point that defendant was not entitled to an award of fees and costs incurred after the county served its offer of compromise. If so, we agree.

In summary, the procedures in ORS chapter 35 governed in the condemnation proceeding. Although the county

served defendant with an unsigned offer of compromise, it was effective to cut off defendant's claimed attorney fees under ORS 35.300(4). And, the county had no obligation to file its offer, which defendant rejected, with the court before trial. Therefore, the trial court erred in entering a supplemental judgment awarding attorney fees and expenses that failed to give effect to the valid offer of compromise.

In A154903, affirmed; in A155453, reversed and remanded.